# UNITED STATES DISTRICT COURT

### for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| BERNARDO ESPINOZA-ZAMUDIO | ) | Case No. 13-M-56b |
| | ) | |
| | ) | |
| | ) | |
| _____ | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____October 16, 2013_____ in the county of _____Milwaukee_____ in the

_____Eastern_____ District of _____Wisconsin_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, 924(c) | Possession of a firearm in furtherance of a drug-trafficking activity |

This criminal complaint is based on these facts:

See attached complainant's affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Marshall S. Hermann, Task Force Officer
*Printed name and title*

Sworn to before me and signed in my presence.

Date: October 16, 2013

_____
*Judge's signature*

City and state: _____Milwaukee, Wisconsin_____

William E. Callahan, Jr., United States Magistrate Judge
*Printed name and title*

## <u>AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT</u>

I, Marshall S. Hermann, being duly sworn, depose and states as follows:

## 1.  TRAINING AND BACKGROUND

1.     I am a Task Force Officer with the Department of Justice, Drug Enforcement Administration and a state certified law enforcement officer currently assigned to the Milwaukee District office.  I am federally deputized by the United States Department of Justice, Drug Enforcement Administration ("DEA").  I have worked as a full time law enforcement officer since June 2001.  Prior to my assignment with DEA, I have worked full time as a law enforcement officer for more than twelve (12) years with the Ozaukee County Sheriff's Department and currently employed in the rank of Detective. I have participated in numerous complex narcotics investigations which involved violations of state and federal controlled substances laws and money laundering laws including Title 21, United States Code, Sections 841(a)(1), 843(b) and 846, and Title 18, United States Code, Sections 1956 and 1957, and other related offenses. Based on my training, experience and participation in drug trafficking investigations and associated financial investigations involving large amounts of cocaine, crack cocaine, marijuana and/or other controlled substances, I know and have observed the following:

    a.  I have utilized informants to investigate drug trafficking.  Through informant interviews, and extensive debriefings of individuals involved in drug trafficking, I have learned about the manner in which individuals and organizations distribute controlled substances in Wisconsin and throughout the United States;

    b.  I have also relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

    c.  I have extensive experience conducting street surveillance of individuals engaged in drug trafficking.  I have participated in the execution of numerous search warrants where controlled substances, drug paraphernalia, and drug trafficking records were seized;

1

d.  I am familiar with the appearance and street names of various drugs, including marijuana, heroin, cocaine, cocaine base (unless otherwise noted, all references to crack cocaine in this affidavit is cocaine base in the form of crack cocaine), ecstasy, and methamphetamine. I am familiar with the methods used by drug dealers to package and prepare controlled substances for sale. I know the street values of different quantities of the various controlled substances;

e.  I am familiar with the language utilized over the telephone to discuss drug trafficking, and know that the language is often limited, guarded, and coded;

f.  I know that drug traffickers often use electronic equipment, cellular and land-line telephones, and pagers to conduct drug trafficking operations;

g.  I know that drug traffickers commonly have in their possession, and at their residences and other locations where they exercise dominion and control, firearms, ammunition, and records or receipts pertaining to such;

h.  I have been assigned to court authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

i.  I know that drug traffickers often put their telephones in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and

j.  I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and/or title these assets in order to avoid scrutiny from law enforcement officials.

2.  Throughout this affidavit, I rely on the records of the Wisconsin Department of Transportation (WDOT), since they are official records, kept in the ordinary course of business, which are updated on a regular basis. I also rely on the records of Wisconsin Energies (WE) since they are business records maintained for billing purposes, kept in the ordinary course of business, and are also updated on a regular basis.

3.  This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law

2

enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is also based upon information gained from interviews with cooperating citizen witnesses, informants, and defendants, whose reliability is established separately herein.

4.     The investigation to date has included traditional law enforcement methods, including, but not limited to: confidential informants, information from other law enforcement officers; documentary evidence; physical surveillance; telephone records; electronic surveillance; and physical seizures. However, because this affidavit is submitted for the limited purpose of securing authorization for search warrants, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are essential to establish the necessary foundation for the requested search warrants.

5.     I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

## II.    TARGET SUBJECT

6.     Based on my personal participation in this investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which I have reviewed and determined to be reliable, I allege the facts contained in this affidavit show that there is probable cause to believe that on July 17, 2013, in the State and Eastern District of Wisconsin, and elsewhere, **Bernardo Espinoza-Zamudio, (TARGET SUBJECT)** has committed a federal felony offense, to wit, possession of a firearm in furtherance of a drug-trafficking activity, in violation of Title 18, United States Code, Section 924(c).

3

## III. PROBABLE CAUSE

8.      The following sub-sections set forth various types of information obtained during this investigation regarding the locations and persons described above.   Such information includes, but is not limited to: (1) information obtained from confidential sources; (2) surveillance; (3) recorded conversations; and (4) physical seizures.

### Information provided by confidential sources, surveillance, and physical seizures.

9.      This investigation was initiated in September 2012.   To date, case agents have determined that a group of individuals, both known and unknown, are involved in a drug trafficking organization that case agents refer to as the "Patterson Drug Trafficking Organization" (DTO).   This DTO cultivates, transports, and distributes marijuana and other controlled substances in and around the areas of Milwaukee, Wisconsin, Mendocino County, California, and elsewhere.

### Information Provided by Confidential Sources (CS #1 and CS #2).

10.      In early September 2012, case agents interviewed Confidential Source #1 (CS #1), who stated that an individual known as Robert Lee received multi-pound shipments of high-grade marijuana in the mail between June and August of 2012.    CS #1 observed Lee receive two separate packages, each of which contained at least 20 pounds of high-grade, vacuumed sealed marijuana.  Lee "bragged" to CS #1 about being paid $1,200 for accepting the marijuana packages in his name on behalf of Paul Heiniger.

11.      According to CS #1, Lee and Heiniger are unemployed.  However, CS #1 has seen Heiniger with thousands of dollars in cash and knows that Heiniger recently purchased a used vehicle for $6,000 in cash.  CS #1 also observed Heiniger at his apartment on East Dekora Street in Saukville with four large rolls of cash that Heiniger claimed to contain $10,000 each.

4

CS #1 stated that Heiniger and Lee claim that they have made over $100,000 per month selling marijuana.

12.     Case agents believe the information provided by CS #1 to be truthful and reliable because CS #1 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, as well as other areas in the United States, which case agents have been able to verify through independent investigation.  CS #1 has also made statements against CS #1's own penal interests.  CS #1 has no criminal charges pending in State or Federal court.  CS #1 is cooperating with law enforcement in order to be a good citizen.  CS #1 has not received any payment for information provided to law enforcement.  Finally, CS #1 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

13.     Based on publicly available records, case agents are aware that on August 20, 2003, Paul R. Heiniger was convicted of felony possession of narcotics.  In 2008, Heiniger was charged with possession of THC and possession of drug paraphernalia.

14.     Heiniger and Lee told CS #1 that sometime during the month of September 2012 they would be flying to California to "work" clipping and trimming marijuana plants.  Heiniger and Lee stated they could make $800 to $1,000 per day in cash for trimming marijuana.  CS #1 stated Heiniger often traveled to California via commercial airline to purchase marijuana and have it shipped back to Saukville.  According to CS#1, when Heiniger returned to Milwaukee, he would deliver the marijuana to his friends on "credit" and these friends sold the marijuana. Heiniger sold marijuana in pound quantities, and Lee sold marijuana in smaller quantities.  Based on review of Facebook, case agents are aware that on September 25, 2012, Heiniger posted on his Facebook profile page that he was in California, and on December 28, 2012, Heiniger

updated his residence status on his Facebook page to Mendocino County. Heiniger later registered a blue 2007 Chevrolet Monte Carlo in California in his name at 1715 Elm Ln. Willits, CA, which is in Mendocino County. Based on their training and experience, case agents know that Mendocino County, California is known as a source county for large amounts of high-grade marijuana that is grown there, and then sold throughout the United States.

15. On September 6, 2012, Edward Patterson was arrested on Interstate 80 in Washoe County, Nevada with 32.66 pounds of marijuana. At the time of his arrest, Patterson informed Nevada Law Enforcement that he was the owner of a McDonald's restaurant and needed the money to "expand" his restaurant businesses. At the time of his arrest, Patterson was utilizing a cellular telephone assigned telephone number (414) 659-7771. According to records obtained from the State of Wisconsin's Department of Financial Institutions (DFI), the McDonald's restaurants located at 11250 N. Port Washington Road, Mequon, WI and 8739 N. Port Washington Road, Fox Point, WI are operated under Fast Eddy's, LLC., incorporated on August 15, 2005. The listed organizers for Fast Eddy's, LLC are Edward Patterson and James E. Patterson. Additionally, the McDonald's restaurant located at 5344 N. Port Washington Road, Glendale, WI is operated under Hotter Faster Eddy's, LLC., incorporated on November 2, 2012. The listed organizer for Hotter Faster Eddy's, LLC is Edward M. Patterson.

16. On November 20, 2012, United States Postal Inspectors identified a suspicious package addressed to CS #2 from Bryan Fadder 9952 Richards Avenue, Live Oak, CA 95953. After a canine officer alerted to the potential presence of narcotics in the package, a search warrant was obtained and approximately 7.2 pounds of marijuana was recovered. Case agents delivered the package to CS #2's address. CS #2 admitted to receiving marijuana packages in the mail for Edward Patterson. CS #2 stated that s/he received a discounted price on two pounds

of marijuana for accepting the shipment, and then delivered the remaining five pounds to Patterson.

17.     CS #2 stated that s/he began selling marijuana in October 2011. Around the beginning of May of 2012, CS #2 met Patterson through John Webler, who works as the Manager at a McDonalds in Sussex, WI. At first, CS #2 only knew that Patterson was associated with McDonalds. CS #2 had provided a small quantity of marijuana to Webler prior to May of 2012. Webler stated that he knew someone who sold high-grade marijuana, and Webler sold 2 ounces of high-grade marijuana to CS #2 on two different occasions.

18.     Case agents believe the information provided by CS #2 to be truthful and reliable because CS #2 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, as well as other areas in the United States, which case agents have been able to verify through independent investigation. CS #2 has also made statements against CS #2's own penal interests. CS #2 has not received any payment for information provided to law enforcement. Finally, CS #2 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

19.     In May 2012, when CS #2 told Webler that s/he wanted to purchase a quarter-pound quantity of marijuana, Webler told CS #2 to call Edward Patterson at (414) 659-7771. CS#2 met Patterson at his residence, 110 E. Belle Ave. in Whitefish Bay, WI. Before the meeting, Patterson texted CS #2, "If you turn me in (to police), I'll feed your balls to my dog." During this meeting at 110 E. Belle Ave. in Whitefish Bay, WI, Patterson showed CS #2 approximately four ounces of marijuana, which Patterson stored in a tool chest in his detached garage. According to publicly available records, 110 E. Belle Ave. in Whitefish Bay, WI. is owned by Edward M. Patterson.

20.     CS #2 asked Patterson what he did for a living, and Patterson informed CS #2 that Patterson owned "a couple" McDonald's Restaurants, and agreed to sell CS #2 marijuana on a regular basis. About 5 or 6 days later, CS #2 went back to Patterson's residence at 110 E. Belle Ave. Whitefish Bay, WI, and purchased a quarter pound of marijuana. CS #2 estimated purchasing approximately 15 pounds of marijuana during July of 2012. Some of this marijuana was fronted, and some paid for in cash. By mid-August of 2012, CS #2 was obtaining one pound quantities of marijuana from Patterson for $4,200 per pound. CS #2 estimated obtaining between 15 and 20 pounds during the month of August of 2012. CS #2 would almost always meet Patterson at his residence, 110 E. Belle Ave., Whitefish Bay.

21.     CS#2 also conducted marijuana transactions with Patterson at other locations including, but not limited to, the McDonald's located at 5344 N. Port Washington Rd. Glendale, WI. CS #2 estimated doing approximately 10 marijuana deals at the McDonald's at 5344 N. Port Washington Rd. Glendale, WI in 2012.

22.     During multiple conversations, Patterson told CS #2 that he had a "long haired hippie friend" that obtained the marijuana for him. Patterson never mentioned a name, but said that he was involved in marijuana sales, and that he had connections for marijuana in California. Patterson told CS #2 that the "hippie guy" was the one who knew botany, and "how to do everything." Based on all of the conversations regarding the "hippie guy," CS #2 believes that Patterson is being supplied by "hippie guy." According to DMV records and based upon surveillance, case agents are aware that Paul Heiniger has long brown hair and matches the description of the hippie guy. Therefore, based on their training and experience, and the investigation to date, case agents believe Patterson's source of supply of marijuana is Paul Heiniger.

23.    According to CS#2, during the summer of 2012, Patterson went to California to obtain higher quality marijuana for a cheaper price. Patterson talked to CS #2 about prices in California versus Milwaukee, and mentioned "investing" in California.  According to CS #2 around August of 2012, Patterson, his high-school aged son and the "hippie dude" went to California to purchase marijuana. CS #2 did not know how they got to California, but knew that they all three drove back to Wisconsin from California with multiple pounds of marijuana. According to grand jury subpoena information, the American Express credit card issued to Edward Patterson, doing business as Fast Eddy's LLC, was used to purchase flights on US Airways tickets departing Milwaukee on August 13, 2012 for San Francisco, California, for Edward M. Patterson, Paul Heiniger, Isiah Patterson, Bernardo Espinosa Vanudios, Jr. (**Bernardo Espinosa-Zamudio**) and Kevin M. Lange. Isiah Patterson is believed to be Edward Patterson's son.  Case agents are aware that **Bernardo Espinoza-Zamudio** has a juvenile conviction for possession of marijuana.

24.    According to CS#2, after Patterson was stopped and arrested in Reno, Nevada, Patterson said that he was going to start the "mail thing," sending marijuana packages to Milwaukee from California via the United States Postal Service. Patterson said this method was more expensive, but safer. Patterson told CS #2 that by utilizing this method, Patterson would send multiple packages containing marijuana to multiple houses in the Milwaukee area. Patterson stated that the parcels could not exceed a certain weight limit, so he only put a few pounds of marijuana in each package. Patterson told CS #2 that Patterson was shipping anywhere from 30 to 60 pounds a month from California to Milwaukee, WI during the fall months of 2012. Patterson would use "clean" boxes which were either new or nice looking. During the fall and winter months of 2012, CS #2 has observed numerous boxes in Patterson's garage at 110 E.

9

Belle Avenue, Whitefish Bay, WI.

25.     CS #2 has received shipments of marijuana in the mail on behalf of Patterson. The first package arrived during the end of October or beginning of November of 2012. CS #2 recalled this shipment to contain 5 pounds of marijuana. CS #2 took 3 pounds out for CS #2 to sell, and was to give the other 2 pounds to Patterson. When the package arrived, CS #2 called Patterson, and Patterson told CS #2 to keep the marijuana, and to bring the money to Patterson once it was sold. CS #2 recalled selling all 5 pounds of marijuana for $4,100 per pound. CS #2 gave Patterson $3,300 per pound for the 3 pounds that were for CS #2 and $3,900 per pound for the other 2 pounds which were supposed to go to Patterson.

26.     On November 30, 2012, under the direction and control of case agents, CS #2 placed a text message to Patterson at 414-659-7771. CS #2 arranged to meet with Patterson at his residence, 110 E. Belle Ave., Whitefish Bay, WI. During the meet, CS #2 asked Patterson for $2,500 that CS #2 had previously given him for a marijuana debt. Patterson told CS #2 that he had given the $2,500 to the supplier, who wanted additional money from CS #2 to pay for the lost marijuana intercepted by law enforcement on November 20, 2012. Shortly after arriving, CS #2 observed that there was an un-holstered black colored pistol, which was out in the open sitting on a flat area attached to the bar-b-que grill. During the meeting, Patterson moved the pistol from the grill into the garage, and made it clear that CS #2 would see the pistol as Patterson was moving it. CS #2 took this as a threat, and stated that CS #2 was scared that Patterson was going to harm CS #2. Patterson also told CS #2 that the police were probably watching CS #2. Patterson said that he and the supplier (believed to be Paul Heiniger) were having a hard time believing CS #2's story. Patterson told CS #2 that Patterson's arrest in Nevada was "different," and that "He" (the supplier) didn't believe CS #2's story because Wisconsin is pretty tough on

Marijuana laws. Patterson then asked CS #2 if CS #2 was working as "an informant." Case agents listened to the recorded conversation, which is consistent with CS#2's version of events.

27.     On February 14, 2013, acting under the direction and control of case agents, CS #2 placed a text message to Patterson at 414-659-7771, informing Patterson that CS #2 wanted to meet. Patterson agreed, and directed CS #2 to Patterson's residence at 110 E. Belle Avenue, Whitefish Bay, WI. During the meeting, CS #2 said that s/he had a customer who wanted to purchase marijuana from Patterson. Patterson agreed to meeting CS #2's customer to conduct marijuana transactions, and stated that "Andrea" (Marquardt) would deal with CS #2' customer instead of Patterson. Patterson said that the marijuana he had right now was better and cheaper than what CS #2 had obtained in the past. The top end marijuana sold for $4,000 per pound, and the lower grade was around $3,400 per pound. Patterson told CS #2 that he had just bought another McDonald's restaurant by Bayshore Mall. Case agents are aware that the McDonald's restaurant located at 5344 N. Port Washington Rd. Glendale, WI is next to Bayshore Mall. Patterson then told CS #2 that he wanted to make sure that CS #2 had "no other agendas" or needed someone to "set up." Case agents reviewed the recording and determined that it is consistent with CS#2's version of events.

### Arrest of Kevin Breitzman on February 4, 2013.

28.     CS #2 identified other members of Patterson's marijuana trafficking organization, one of which CS #2 identified as "Kevin". CS #2 stated that during the fall months of 2012, Patterson was in Seattle, Washington on business. While Patterson was in Seattle, Patterson told CS #2 to obtain marijuana from "Kevin." CS #2 provided case agents with a cellular telephone for "Kevin" of 414-232-0083. "Kevin" was also the manager of the McDonald's restaurant located in Mequon, WI, 11250 N. Port Washington Road, Mequon, WI. CS #2 had purchased

marijuana from "Kevin" at Patterson's direction inside of "Kevin's" apartment. "Kevin" was later identified by case agents as Patterson's brother in-law, Kevin Breitzman.

29.     Case agents learned that on February 4, 2013, the California Highway Patrol conducted a traffic stop of a vehicle driven by Kevin Breitzman on Hwy. 101 in Sonoma County, California. Troopers smelled a slight odor of marijuana coming from within the vehicle. When Troopers asked Breitzman about the odor, he initially denied having marijuana in the vehicle. Breitzman then removed a small amount of marijuana from a backpack on the front seat. During a subsequent search of the vehicle, Troopers located 2 empty boxes for commercial grade vacuum sealer bags, used latex gloves, a packing tape gun with tape, receipts, airline flight itinerary and boarding passes, rental car summary, miscellaneous papers, including a receipt from Home Depot showing the purchase of nine (9) buckets, a cellular telephone, and seven (7) cardboard boxes. Each of the boxes was determined to contain one (1) 5 gallon orange Home Depot Paint Bucket. Inside of each bucket was sealed packages of marijuana inside vacuum sealed bags. The total weight of marijuana seized was determined to be approximately 22.2 pounds. Several of the receipts seized from the vehicle showed purchases for the tape, boxes, packing materials, buckets, and United States Postal Service Shipments. Breitzman was arrested for Possession of Marijuana for Sales and Transportation of Marijuana for Sales.

30.     Case agents reviewed the booking form from the Sonoma County Jail. Breitzman listed an address of 1420 E. Capital Drive, Apartment #105, Shorewood, Wisconsin, and Breitzman provided a telephone number of 414-232-0083. Breitzman listed "McDonalds" as his employer, and his occupation as "Supervisor." Breitzman listed "Ed Patterson" as an emergency contact name, and his relationship as "brother" with an unknown address.

31.     Case agents examined the documents seized from the traffic stop, and observed that Breitzman rented a vehicle from Enterprise Rental Car on Saturday, February 2, 2013, and was scheduled to return the vehicle on Monday, February 4, 2013.  Breitzman listed a phone number of 414-232-0083 for the rental, and provided an email address of ed.Patterson@partners.mcd.com. Located in Breitzman's vehicle at the time of his arrest was a business card for Ed Patterson listing Patterson as the owner of Mequon McDonald's (11250 N. Port Washington Rd. Mequon, WI) and Fox Point McDonald's (8739 N. Port Washington Rd. Fox Point, WI) restaurants.  Also located was a typed letter on McDonald's letterhead stating "To Whom It May Concern:  I am authorizing my employee, Kevin Breitzman to use my Business Gold American Express between the dates of 2-2-13 thru 2-5-13.  He will be traveling to California on business, may use the card for car, hotel, gas, food and incidentals.  If you have any questions, feel free to ask.  414-659-7771, Thanks, Edward Patterson."  The letter had a signature below the name, and is believed to be signed by Edward Patterson.

32.     Case agents reviewed the receipts located in the vehicle, and observed a receipt from C&M Self Storage in Ukiah, CA showing the purchase of one (1) tape gun with tape, four (4) large rolls of bubble wrap, and nine (9) Small Boxes, for a total of $58.53 paid in cash. Agents also observed Home Depot receipts from Ukiah, CA showing the purchase of nine (9) five gallon buckets and nine (9) lids for the buckets.  These items were also paid for in cash.

33.     Case agents observed a receipt from the Ukiah Main Post Office in Ukiah, CA, dated February 4, 2013, at 11:26 am.  This receipt showed an Express Mail package sent from this Post Office to "Milwaukee, WI  53221", showing a shipment price of $73.65, which was paid for in cash.  This package weighed 7 lbs. 1.2 oz. and showed Label #EI719082615US, with an expected delivery date of February 6, 2013.  Also located was a "Customer Copy" of the

13

Express Mail package, for Label #EI719082615US. The sender information was "T. Vargas, 1599 N. Bush St, Ukiah, CA 95482." The package was sent to "Tammy WEBLER 6752 S. 17th Street, Milwaukee, WI 53221." A federal search warrant was obtained for this parcel, which was found to contain approximately 1,531 grams of high-grade marijuana.

34. Case agents observed an additional receipt from the Talmage PO in Ukiah, CA, dated February 4, 2013, at 12:03 pm. This receipt showed a Priority Mail package sent from this Post Office to "Andrea Marquardt at N16W26587 Bluegrass Lane, Pewaukee, WI 53072," with a shipment price of $44.60, which was paid for in cash. This package weighed 7 lbs., 2 ounces, and showed Label #9505510666193035433800, with an expected delivery date of February 7, 2013. Based on their training and experience, and the investigation to date, case agents believe this parcel contained marijuana.

**Information Obtained by Surveillance of Patterson DTO.**

35. On February 26, 2013, surveillance was conducted on Edward Patterson at 110 E. Belle Avenue, Whitefish Bay, WI. At approximately 11:40 am, Patterson exited 110 E. Belle Avenue, Whitefish Bay, WI in a silver 2006 BMW 525XI bearing Wisconsin license plate 257HZJ, which is registered to Tanya L. Patterson, Patterson's wife. The vehicle traveled to Ace Hardware, located at 6240 N. Port Washington Road, Glendale, WI. When Patterson exited Ace Hardware, he carried several white 5 gallon buckets. Patterson then returned 110 E. Belle Avenue, Whitefish Bay, WI, taking several buckets inside with him. At approximately 12:50 pm, Andrea Marquardt arrived at 110 E. Belle Avenue, Whitefish Bay, WI, carrying only a purse.

36. At approximately 1:49 pm Marquardt exited 110 E. Belle Avenue, Whitefish Bay, WI and quickly walked to her vehicle, carrying a large black garbage bag which appeared to be

full. At approximately 1:55 pm Patterson and Marquardt exited 110 E. Belle Avenue, Whitefish Bay, WI and walked to their vehicles. Patterson carried a white bucket, which he placed inside his BMW. Marquardt followed Patterson to the Kohl's parking lot at 5650 N. Bayshore Dr., Glendale, WI, where they parked next to a red Chevrolet S10 pickup truck. Per CS #2, this is a location where Patterson and Marquardt had done drug transactions in the past. An unidentified white male with gray hair exited his vehicle and walked to Patterson's BMW and opened the front passenger side door and leaned inside. Based on their training and experience, and the investigation to date, case agents believe that Patterson and Marquardt provided the unknown male with an unknown quantity of marijuana.

37.     At approximately 2:08 pm Patterson and Marquardt drove to the McDonald's restaurant located at 5344 N. Port Washington Rd. in Glendale, WI. Patterson and Marquardt parked in the McDonald's parking lot and met with a then-unknown male subject (later identified as CS #3). CS #3 exited CS #3's vehicle and entered into Patterson's BMW. Approximately one minute later, CS #3 exited Patterson's vehicle and carried an object in CS #3's arms. The object was covered by a jacket. CS #3 quickly placed the object in CS #3's vehicle and drove away. Patterson and Marquardt also left the parking lot. Based on the activities observed by case agents that day, case agents believe that Patterson and Marquardt distributed marijuana to CS#3.

38.     On March 7, 2013, United States Magistrate Judge Patricia J. Gorence, from the Eastern District of Wisconsin, signed a warrant for an Electronic Tracking Device (GPS) to be installed on Patterson's 2012 Ford F-350 Super Duty Pick-Up Truck, bearing Wisconsin Registration EC47520. Surveillance reflects that in the process of conducting his drug transactions, Patterson drives to and from his residence on 110 E. Belle Avenue, Whitefish Bay, WI to the McDonalds' restaurants located at 5344 N. Port Washington Road, Glendale, WI,

11250 N. Port Washington Road, Mequon, WI, or 8739 N. Port Washington Road, Fox Point, WI. For example, on April 4, 2013, at approximately 3:05 pm, case agents observed Patterson's truck parked at the McDonald's restaurant at 11250 N. Port Washington Rd. Mequon, WI. At approximately 3:15 pm, Marquardt arrived in her green Toyota Camry and parked directly next to Patterson's truck. A short time later, Patterson exited the Mequon McDonald's 11250 N. Port Washington Rd. Mequon, WI, and walked to his vehicle, where he met with Marquardt inside the truck. Minutes later, Patterson exited the driver's side, opened the rear door and appeared to retrieve an item. Patterson then re-entered the front driver's seat. At approximately 3:45 pm, Marquardt exited the vehicle carrying a plastic grocery style bag, which appeared to contain something. Marquardt then walked to her car and placed the plastic bag inside the trunk. Patterson walked back inside the McDonald's, 11250 N. Port Washington Rd. Mequon, WI, and Marquardt drove away. Based on their training and experience, and the investigation to date, case agents believe that Marquardt obtained marijuana from Patterson.

39. As another example, on April 9, 2013, surveillance was conducted at Patterson's residence located at 110 E. Belle Ave. in Whitefish Bay, WI. At approximately 10:15 am, case agents observed a gray 2005 GMC Envoy bearing Wisconsin registration #HM9609 registered to Paul R. Markiewicz arrive at 110 E. Belle Ave. in Whitefish Bay, WI. A male later identified as Paul Markiewicz (who was subsequently identified as an employee of Patterson's McDonalds restaurants) exited the vehicle and entered Patterson's residence. At approximately 10:20 am Markiewicz exited 110 E. Belle Ave. in Whitefish Bay, WI, and drove away. At approximately 10:50 am, Andrea Marquardt arrived at 110 E. Belle Ave. in Whitefish Bay, WI in her green 2011 Toyota Camry. At approximately 11:05 am Markiewicz returned to 110 E. Belle Ave. in Whitefish Bay, WI, where he parked near Marquardt's vehicle and met with her at the driver's

side of her car. At approximately 11:09 am Markiewicz returned to the gray GMC Envoy and retrieved a brown paper grocery bag from inside his vehicle.

40.     At approximately 11:11 am, Breitzman arrived at 110 E. Belle Ave. Whitefish Bay, WI in his 1999 maroon with silver trim GMC Astro van, WI #844-TJG registered to Kevin Breitzman. Breitzman exited his van and went into 110 E. Belle Ave. in Whitefish Bay, WI. At 11:20 am Breitzman, Markiewicz, and Marquardt left Patterson's residence at 110 E. Belle Ave. Whitefish Bay, WI. At approximately 12:10 pm Marquardt pulled into the shopping center lot and parked to the east of the Walgreens Drug Store located at 6442 N. 76th Street and met with two unidentified black females. Based on their training and experience, and the investigation to date, case agents believe that Marquardt provided marijuana she obtained from 110 E. Belle Ave. Whitefish Bay, WI to marijuana customers. At approximately 12:51 pm, Patterson exited his home carrying a dark colored plastic bag. Patterson placed the plastic bag in the rear driver's side area. Patterson drove to the Glendale McDonald's at 5344 North Port Washington Road, Glendale WI and parked behind the restaurant and next to Breitzman's vehicle on N. Iroquois Ave. Iroquois Avenue runs parallel to Port Washington Road; the McDonalds restaurant and parking lot runs from Iroquois to Port Washington Road. At approximately 1:01 pm, Patterson and Breitzman met by their vehicles. Patterson then drove to the alley behind 2542 N. Holton Street, Milwaukee, WI (**Bernardo Espinoza-Zamudio**'s residence). At approximately 1:16 pm Patterson exited the rear of the residence at 2542 N. Holton Street. Patterson entered his vehicle and departed the area. At approximately 2:16 pm Markiewicz arrived back at Patterson's residence at 110 E. Belle Ave. in Whitefish Bay, WI. Markiewicz exited the Envoy and removed a dark colored bag (similar to a duffle bag) and a cardboard box, then went into the residence. At approximately 2:19 pm Markiewicz exited Patterson's home with the dark colored bag,

placed the bag in the rear of the vehicle and drove away. At approximately 2:52 pm Patterson entered his Ford truck and drove to the rear of the Glendale McDonald's restaurant, 5344 N. Port Washington Road, Glendale, WI. At approximately 2:55 pm Patterson parked next to Breitzman's 1998 GMC Astro van on N. Iroquois Ave. Patterson exited his vehicle and met with Breitzman. At approximately 2:56 pm Patterson left the Glendale McDonald's and drove to the Bayshore Shopping Center where surveillance was terminated. It is case agents belief that Patterson was distributing marijuana that day to several individuals.

41.     On May 2, 2013, at approximately 10:35 am, case agents observed Markiewicz's red Chevrolet S10 pick-up truck parked at the Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI. A short time later, Markiewicz left in his vehicle. Then, at approximately 10:52 am, case agents observed Breitzman's vehicle parked on North Iroquois Avenue, directly behind the Glendale McDonald's 5344 N. Port Washington Road, Glendale, WI. Approximately 15 minutes later, case agents observed Breitzman carrying what appeared to be a small brown paper bag in his hand, enter his van, and leave. Based on their training and experience, and the investigation to date, case agents believe that the bag in Breitzman's possession contained marijuana or drug proceeds.

42.     A short time later, Breitzman arrived at his new residence, 5649 N. River Forest Drive, Glendale, WI. Review of the court-authorized GPS data for Patterson's truck revealed that earlier on May 2, he went to 5649 N. River Forest Drive, Glendale, WI. Shortly after arriving, Breitzman left 5649 N. River Forest Dr., and returned to the Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI. Then, at 12:46 pm, case agents observed Patterson arrive at his residence 110 E. Belle Avenue, Whitefish Bay, WI in a white Ford F350 pick-up truck, where Paul Heiniger arrived a short time later. Patterson later returned to the

Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI. Then, at approximately 4:23 pm, case agents observed Breitzman at Patterson's residence 110 E. Belle Avenue, Whitefish Bay, WI, where the two were observed in the garage. Thereafter, Breitzman exited the garage and walked back to his van carrying a package under his arm. Based on their training and experience, and the investigation to date, case agents believe that Breitzman obtained a quantity of marijuana from Patterson.

43. Approximately 15 minutes later, case agents observed Breitzman arrive at the Fox Point McDonald's located at 8739 N. Port Washington Rd. in Fox Point, where he parked his van on the north side of the parking lot. At approximately 4:57 pm, agents observed a white male subject exit the Fox Point McDonald's and meet with Breitzman at his van. The subject appeared to be a manager at the McDonald's and was dressed in a button-down shirt with a tie, black dress pants, and a name tag on his shirt. The subject handed an object to Breitzman then returned to the McDonald's. At approximately 4:58 pm, agents observed a white male subject wearing a blue hooded sweatshirt and tan pants walk from the McDonald's to Breitzman's van. The subject entered Breitzman's van on the front passenger side. The subject then exited Breitzman's van carrying a white paper bag in his hand. Based on case agents training and experience, as well as the investigation to date, case agents believe that Breitzman conducted drug transactions and/or money pickups at 8739 N. Port Washington Rd. in Fox Point on behalf of Patterson.

**Information Provided by CS #3 and CS #4.**

44. On May 15, 2013, case agents interviewed CS #3. CS #3 knows an individual named Edward Patterson, who is the owner of several McDonald's restaurants including the McDonald's restaurants located in Mequon, Fox Point, and Glendale. CS #3 has been providing information to case agents since May 2013. Case agents believe the information provided by CS

19

#3 to be truthful and reliable because CS #3 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, which case agents have been able to verify through independent investigation. CS #3 has also made statements against CS #3's own penal interests. CS #3 has criminal charges pending in State court, and is cooperating with law enforcement in order to gain consideration for those charges. CS #3 has not received any payment for information provided to law enforcement. Finally, CS #3 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

45.    CS #3 stated that Patterson has a larger office at the Mequon location 11250 N. Port Washington Road that seemed to be just for Patterson. The Fox Point McDonalds at 8739 North Port Washington Road, and Glendale McDonald's 5344 N. Port Washington Road, don't have a large office for Patterson, and only have a small office space for managers to use. Patterson holds manager meetings at all the McDonalds locations.

46.    CS #3 provided a cellular telephone number of 414-659-7771 for Patterson. CS #3 stated that Patterson has numerous McDonald's telephone lines that Patterson gives to employees. The 659-7771 number is the only number that CS #3 had for Patterson. CS #3 did not know of Patterson using any other telephone numbers. Patterson lives in Whitefish Bay, Wisconsin, and lives in a two story brick house on a corner. The back yard has a fence, and a detached garage. Patterson drives a newer white cab and a half pickup truck. Patterson also drives a newer gray colored 4 door BMW. Patterson is married, and has a son who is around high school age.

47.    CS #3 met Patterson about 6 months prior to the interview. CS #3 worked at all three of Edward Patterson's McDonald's locations, Fox Point, Mequon, and Glendale. When CS

#3 met Patterson, CS #3 was working at Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI. Patterson asked CS #3 if CS #3 smoked marijuana, and CS #3 stated yes. Patterson asked if CS #3 could sell marijuana, which CS #3 stated yes. Patterson then began fronting 1 pound quantities of marijuana to CS #3. CS #3 recalled being charged $3,500 per pound.

48.     The CS #3 would normally meet Patterson behind the Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI to obtain the marijuana. Per CS #3, there is a small street (which case agents know to be N. Iroquois Avenue) behind the McDonald's restaurant, and Patterson would meet several individuals at one time to distribute the marijuana from that location. CS #3 has observed three to four other individuals picking up marijuana from Patterson during each time CS #3 obtained marijuana from Patterson. CS #3 has also obtained marijuana from Patterson on two occasions at Patterson's residence at 110 E. Belle Avenue, Whitefish Bay, WI. These deals occurred in the detached garage. CS #3 observed a table with scales and vacuum sealers where Patterson would weigh out the marijuana to be sold. Patterson kept the marijuana in five gallon buckets in the garage.

49.     CS #3 knows that Patterson is obtaining high-grade marijuana from a source in California. Patterson also told CS #3 that Patterson has an alternate source of supply in the Milwaukee area when the California marijuana isn't available. CS #3 did not know any names of these individuals. Patterson told CS #3 that one of Patterson's associates was caught in California with about 25 pounds of marijuana. Patterson had sent this individual out to obtain marijuana for Patterson, but the individual was arrested. Patterson told CS #3 that Patterson lost over $40,000 from that arrest. Case agents believe that Patterson was referring to the arrest of Kevin Breitzman on February 4, 2013.

50.     When CS #3 first met Patterson, Patterson told CS #3 that it was "shipped", and then later told CS #3 that Patterson would send people out to California to get the marijuana for Patterson. Patterson told CS #3 that the last few times Patterson had sent people out, there were money problems (such as money shortages) when they arrived to meet the supplier. Some of Patterson's people have been "caught" (by law enforcement) in California as well. CS #3 said that Patterson sometimes spreads the marijuana around to various individuals to store for Patterson in addition to keeping marijuana at Patterson's residence at 110 E. Belle Avenue, Whitefish Bay, WI. CS #3 stated that Patterson's wife complains about Patterson storing marijuana at the house.

51.     CS #3 stated that on one occasion, Patterson told CS #3 that Patterson had "lost a package," and Patterson had sent one of his girls to go get the package. CS #3 asked Patterson if Patterson was nervous about sending her to get it, and Patterson said he wasn't because the girl was blond, blue-eyed, pretty, and skinny so nobody would suspect that she was doing something illegal (This physical description matches that of Andrea Marquardt). CS #3 stated that Patterson has "a lot" of money, and can get out of trouble because Patterson "is rich."

52.     On numerous occasions since May 28, 2013, case agents have interviewed CS #4 regarding Edward Patterson and the DTO. CS #4 has been providing information to case agents since May 2013. Case agents believe the information provided by CS #4 to be truthful and reliable because CS #4 has provided information regarding drug trafficking activities in the Southeast Wisconsin area, as well as the United States, which case agents have been able to verify through independent investigation. CS #4 has also made statements against CS #4's own penal interests. CS #4 has no criminal charges pending in State or Federal court, and is cooperating with law enforcement in order to gain consideration for CS #3 pending charges in

State court. CS #4 has not received any payment for information provided to law enforcement. Finally, CS #4 has had an adequate opportunity to directly observe the events discussed and/or has heard conversations directly from the individuals discussed herein.

53.     CS #4 is an employee of the McDonald's restaurants located in Mequon, Fox Point, and Glendale, WI. CS #4 stated the three McDonald's are owned by Edward Patterson, who resides in Whitefish Bay, WI. CS #4 has been a long term employee for Patterson and holds a supervisor position. CS #4's responsibilities at Patterson's three McDonald's locations (Fox Point, Mequon, and Glendale) include overseeing training and development of managers, maintaining employee schedules, reviewing mid-month and end-month sales, food, and labor summaries, reviewing profit and loss summaries, handling daily cash deposits, and conducting register counts several times throughout the day.

54.     CS #4 stated that Patterson told CS #4 that he started selling marijuana last summer (2012) in order to earn money to purchase the McDonald's located in Glendale, WI. Patterson also told CS #4 that he has plans to purchase three (3) additional McDonald's in the future including the McDonald's located on Brown Deer Rd. at Green Bay Rd., one on Good Hope Rd., and a third located somewhere on Capitol Drive. Patterson told CS #4 that he plans on selling marijuana enough to reach a two million dollar profit because by that time marijuana will be legalized nationally. Patterson told CS #4 that now is the time to sell marijuana because he can make the largest profit now before it is fully legalized. CS #4 stated that Patterson wanted to purchase or use a semi-truck to transport larger amounts of marijuana from California to Wisconsin instead of shipping it through the mail.

55.     CS #4 stated that Patterson is open about the drug trafficking at the Glendale McDonalds, 5344 N. Port Washington Rd. in Glendale, WI. Patterson openly meets with drug

customers at the rear of the McDonalds on a back road behind the restaurant (which case agents know to be N. Iroquois Avenue). CS #4 stated that Patterson routinely drives around with large paint buckets that contain marijuana in Patterson's truck. Patterson talks openly with CS #4 about Patterson's drug trafficking, and mentions that if Patterson ever got pulled over Patterson could be in trouble because of the marijuana in the buckets. Additionally, Kevin Breitzman and Paul Markiewicz, both of whom are McDonald's employees and members of Patterson's DTO speak openly about drug trafficking with CS #4.

56.     Patterson asked if CS #4 would be willing to receive marijuana packages for him in the mail. Patterson was concerned that he needed new addresses to send the marijuana packages to since the police had access to the old addresses from Breitzman's arrest. CS #4 stated when Patterson first approached CS #4 to receive marijuana packages for him in the mail CS #4 initially declined the offer. After some thought CS #4 agreed to provide Patterson with an address where he could send a package. CS #4 provided Patterson with an address near 96th St. and Brown Deer Rd. in the City of Milwaukee. CS #4 stated the address did not belong to CS #4 and that it was an address that CS #4 was familiar with in the past. CS #4 stated Patterson had "Andrea" wait at the address to receive the package. After the package was delivered Patterson paid CS #4 $500 in cash.

57.     CS #4 stated Patterson sent a second package to the address CS #4 provided and offered to pay CS #4 $1,200. This time CS #4 refused payment and no longer wanted to have any participation in receiving packages for Patterson. Patterson informed CS #4 that Patterson was willing to pay a premium price because the marijuana was of such good quality that Patterson needed the packages to arrive safely. CS #4 believed that the package was sent to the same address because Patterson later offered to pay CS #4 again, but CS #4 again declined the

money.

58.     Breitzman told CS #4 that Patterson moved all of his marijuana from his garage over to Breitzman's apartment.  CS #4 believed Breitzman lived somewhere on Capitol Drive in an apartment which was paid for by Patterson.    Case agents know that during this time, Breitzman was residing at 1420 E. Capitol Drive, #105, Shorewood, WI.  Breitzman also told CS #4 that Patterson's wife was upset because Patterson would pull their teenage son out of school to help him separate, weigh, and repackage marijuana when his shipments would arrive.  Breitzman also told CS #4 that Patterson uses his son to distribute marijuana to other students at Whitefish Bay High School.  CS #4 stated Patterson mainly sells marijuana out of his garage when his wife is away at work.  When his wife returns home, Patterson goes to the Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI parking lot to sell marijuana.

59.     On June 26, CS #4 stated that Patterson called CS #4 on June 24, 2013, and told CS #4 that Patterson was having an emergency meeting on June 25, 2013 at the Glendale McDonald's restaurant, 5344 N. Port Washington Rd. in Glendale, WI.  Patterson told CS #4 that 2 deposits ($4,000 and $1,000) from the Glendale McDonald's restaurants were missing, and that Patterson suspected Kevin Breitzman of stealing the deposits. Patterson told CS #4 that Patterson won't be "held hostage" by Breitzman any longer, and that Breitzman was fired from his position as Manager of the Glendale McDonald's.  CS #4 spoke with Patterson, and was texting and speaking to Patterson on the phone.  Patterson told CS #4 that Patterson wanted CS #4 to run the Glendale McDonald's until Patterson could find a replacement for Breitzman.

60.     On June 25, 2013, the meeting was held in the lobby at the Glendale McDonald's, 5344 N. Port Washington Rd. in Glendale, WI.  During this meeting, Patterson said that Breitzman had been fired from McDonald's, and that Breitzman was no longer allowed on

25

McDonald's property. Patterson also told CS #4 that Breitzman was "broke", and that Patterson had to pay Breitzman's last months' rent on Breitzman's apartment, because Breitzman had moved out, and Patterson's name was on the lease also. Patterson also made a comment that Breitzman had stolen "something else" from Patterson, which CS #4 assumed to be either marijuana or prescription pills. CS #4 asked if Patterson was scared that Breitzman would say something to the police about Patterson's illegal activities, and Patterson told CS #4 "No, I'll kill him", and then laughed. CS #4 stated that s/he did not know where Breitzman was staying at that time but s/he heard from other employees that Breitzman was living with an ex-McDonald employee named Tony Bieniewski. Bieniewski used to be a store manager for Patterson, and resides at 5649 N. River Forest Drive, Glendale, WI.

61. On July 1, 2013, case agents received additional information regarding text messages sent from Patterson to CS #4. Patterson stated via text to CS #4 that he sent Paul Markiewicz and Kevin Breitzman to California for Breitzman's court date. Patterson stated that he sent Markiewicz with because he couldn't trust Breitzman with a credit card. Patterson stated that Breitzman cleared out what he had in his storage locker, which he estimated to be valued at $2,000. CS #4 asked Patterson if he still sent someone to California for the "other stuff" now that he can't trust Breitzman. Patterson stated that he is "laying low", however, Patterson told CS #4 that this is the time to make the best money. Patterson stated that this should be great for everybody but right now he couldn't trust anyone. Patterson also replied "why would someone (Breitzman) steal $2,000 when they can make $20,000 over the next six months?"

62. On July 23, 2013, case agents spoke to CS #4 via telephone regarding the recent development with Edward Patterson, Paul Markiewicz and the DTO. Markiewicz told CS #4 that Patterson sent him with Breitzman to California for Breitzman's court appearance. While in

California, Patterson paid Markiewicz to send back marijuana via the US mail. Markiewicz told CS #4 that this was the third time Patterson had sent him to California to purchase marijuana and ship it back to Milwaukee. Markiewicz told CS #4 that Patterson owed him approximately $10,000 for the three times he went to California to mail back marijuana packages.

63. Markiewicz told CS #4 that Patterson had him meet with an unknown male while in California. Markiewicz and the unidentified male then went "shopping" for marijuana. Based on intelligence gained from Breitzman's previous trip to California in February 2013, case agents believe the subject Markiewicz met in California was Paul Heiniger. (a subsequent search of Markiewicz's telephone showed that Markiewicz had Paul Heiniger's cellular telephone numbers stored in his telephone under the name "Skill Calumet")

64. Markiewicz told CS #4 that when he returned home from California, Patterson took him, Breitzman, and another McDonald's employee named Benjamin Gibson to Patterson's house, 110 E. Belle Ave. Whitefish Bay, WI 53217 and Patterson's father's house to shred numerous boxes containing paperwork from McDonald's restaurants. Markiewicz stated that they were unsure what the paperwork was for and when they asked Patterson told them to mind their own business.

65. Additionally, Markiewicz told CS #4 that Patterson was paranoid and couldn't trust anyone. Markiewicz stated that Breitzman stole some marijuana from Patterson's storage shed so Patterson paid off the remainder of the lease for the storage shed North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin #38 and moved all of the marijuana to Markiewicz's house W124 N13025 Wasaukee Road, Village of Germantown, WI for a couple of days. Patterson then moved the marijuana to another unknown location because he didn't trust Markiewicz. Based upon records obtained pursuant to a grand jury subpoena, case agents are

aware that Patterson also maintains a storage unit at North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin #43. Markiewicz told CS #4 that Patterson no longer needed to take deposits from the McDonald's because he is "all caught up and ahead of the game". CS #4 also stated that the Glendale McDonald's, 5344 N. Port Washington Rd. in Glendale, WI, received an anonymous complaint that drugs were being sold at the restaurant. CS #4 stated that Patterson would be made aware of the complaint but it wouldn't be sent to McDonald's Corporation.

66.    On July 31, 2013, case agents interviewed CS #4. Paul Cooper, the manager of the McDonald's at 8739 N. Port Washington Road, Fox Point, WI, told CS #4 that when he helped move Kevin Breitzman earlier that month, to 5649 N. River Forest Drive, Glendale, WI, he discovered a drug ledger containing all of Edward Patterson and Breitzman's customers. The ledger listed what each customer purchased, how much they were charged, and when they purchased it. Cooper told CS #4 that he kept the ledger in case Patterson ever decided to fire him. Cooper didn't say what names were listed on the drug ledger, however, did state that most of the people named on the ledger were McDonald's employees. CS #4 also stated that Breitzman was still employed by Patterson, however he was no longer the manager at the Glendale McDonald's. CS #4 stated Breitzman was doing odd and end jobs for Patterson at the Fox Point McDonald's, 8739 N. Port Washington Road, Fox Point, WI. An employee at the Glendale McDonald's told CS #4 that he needed a raise now that Breitzman was gone because he wasn't making all of the "extra money on the side." CS #4 believed that Breitzman was selling marijuana to the majority of the Glendale McDonald's staff.

**Addresses used by Patterson DTO to receive marijuana shipments and mail drug proceeds and store marijuana and drug trafficking proceeds.**

67. In addition to CS#4, other informants state that the DTO uses various addresses in and around Milwaukee to receive marijuana shipments and mail drug proceeds. CS #3 stated that Patterson sometimes spreads the marijuana around to various individuals to store for Patterson in addition to keeping marijuana at Patterson's residence at 110 E. Belle Avenue, Whitefish Bay, WI.

68. Review of USPIS records reveals that a suspicious package, believed to be a money package, was shipped from X. Morales-Zamudio & **Bernardo Espinoza-Zamudio**'s residence at 2542 N. Holton Street, Milwaukee, WI, on September 24, 2012. The package was mailed from X. Morales 2542A N. Holton St. Milwaukee, WI 53212 to Paul Heiniger 1715 Elm Ln. Willits, CA 95490. The package weighed 2 lbs. 11 oz. and was delivered on September 25, 2012. The package was signed for by Paul Heiniger. Public records indicate that a subject named Bernardo Espinosa-Zamudio also resides at 2542A. N. Holton St. Milwaukee, WI.

69. Based on their training and experience, and the investigation to date, case agents believe the suspicious package contained U.S. currency constituting drug proceeds or payment for marijuana because these packages are smaller in size and are sent from a known marijuana user city to a known marijuana source city. Also, the sender and receiver used their correct names and addresses on the money package.

70. Case agents reviewed GPS records that show the movements of Patterson's truck and on April 26, 2013, and June 11, 2013, Patterson's vehicle traveled to **Bernardo Espinoza-Zamudio**'s house at 2542 N. Holton St., Milwaukee, WI. Also in April of 2013, Paul Heiniger traveled to Wisconsin, presumably to bring a shipment of marijuana to Edward Patterson and to

meet with Edward Patterson. Case agents conducted surveillance of Patterson and Heiniger meeting in Glendale, Wisconsin and case agents are aware that members of the Patterson DTO then went on a fishing trip. A Fishing License search for Heiniger, Houtsinger, and Patterson was conducted through the Wisconsin Department of Natural Resources (DNR). The search revealed Heiniger and Patterson both obtained a Wisconsin Fishing License on Friday, April 26, 2013 at the Wolf River Resorts located in Winneconne, WI. A Grand Jury Subpoena served the Wolf River Resorts, located at 17 N. 1st Ave. Winneconne, WI revealed that Andrea Marquardt, Edward Patterson, Timothy Moorman, Paul Heiniger and **Bernardo Espinoza-Zamudio** all purchased WI Fishing Licenses from the resort on April 26, 2013.

### North Shore Storage, 4390 N. Richards Street, Units #43 and #38.

71. On October 2, 2013, case agents received records from U-Haul Moving and Storage. These records pertained to Customer Lists for North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin. The records revealed that Unit #38 has been rented to Kevin Breitzman since March 30, 2013 and is paid through October 29, 2013 and Unit #43, has been rented to Edward Patterson since June 27, 2013 and is paid through October 26, 2013.

72. CS#4 stated that after Edward Patterson's wife found out that he stored marijuana in the garage he then moved the marijuana supply to Breitzman's apartment and then to the storage unit. After Breitzman was accused of stealing money and marijuana from the storage unit, Patterson then temporarily moved it to Markiewicz' house and then to another location, believed to be storage unit E#43. CS #4 stated that Breitzman's storage unit contains his personal property.

73. Case agents observed Patterson at North Shore Storage 4390 N. Richards Street, Milwaukee, Wisconsin on September 24, 25, and 26, 2013. Additionally, review of the location

monitoring device on Patterson's Ford F-350 from July 5, 2013 through September 6, 2013 revealed that Patterson's Ford F-350 has traveled to the following locations associated with Patterson's drug distribution activities with the following frequency: Tammy and John Webler's residence at 6752 S. 17th Street, Milwaukee, WI (2 times), the U-Haul Storage Sheds, 4390 N. Richards Street, Milwaukee, WI (8 times), Paul Markiewicz's residence at W124 N13025 Wasaukee Rd., Germantown, WI (3 times), **Bernardo Espinoza-Zamudio**'s residence at 2542A N. Holton Street, Milwaukee, WI (12 times), Glendale McDonald's, 5344 N. Port Washington Road, Glendale, WI (20 times), Fox Point McDonald's, 8739 N. Port Washington Road, Fox Point, WI (5 times), Mequon McDonald's, 11250 N. Port Washington Road, Mequon, WI (10 times). Breitzman's storage unit is located very close to Patterson's storage unit; they are in the same "group" of storage units and are 5 units away from each other. Because of the close proximity of the units, based on data from the GPS monitoring device on Patterson's vehicle, case agents cannot definitively determine which of the two storage sheds Patterson is using when the GPS data shows his vehicle at 4390 N. Richards Street, Milwaukee, WI.

74.     Based on their training and experience and the investigation to date, case agents believe that Patterson uses his storage shed unit E#43 to store his marijuana inventory and store his drug proceeds and Breitzman uses his storage unit #E38 to store his personal property, including documents relating to his involvement in marijuana trafficking.

**Bruce Hutson's residence: 4831 N. Oakland Avenue, Milwaukee, WI (Upper unit).**

75.     On September 9, 2013 case agents spoke to CS #4. CS #4 provided information regarding a new employee named Bruce Hutson. Patterson stated Hutson was temporally hired to act as the supervisor for all three stores located in Mequon, Fox Point, and Glendale. Patterson stated he wanted Hutson to gain experience as a store supervisor in preparation for Hutson to

own his own McDonald's restaurant in the future or to potentially become a business partner with Patterson. CS #4 stated on Saturday, September 7, 2013 CS #4 and Hutson were driving in a vehicle together. While in the vehicle Hutson placed a phone call. CS #4 stated from the content of the conversation it appeared that Hutson was talking to Patterson. During the phone conversation Hutson asked "How many of the packages came in unsealed?" Hutson further stated "Whatever packages were unsealed need to be jarred because I have customers waiting." After that comment was made, Hutson stated "We need to talk about this later."

76. Based upon their training and experience and the investigation to date, case agents believe Hutson was talking to Patterson about marijuana shipments he received that were unsealed and that they needed to be repackaged into jars.

77. Public records search revealed that Hutson currently resides at 4831 N. Oakland Ave. Whitefish Bay, WI and previously resided at 5075 N. Cumberland Blvd. Whitefish Bay, WI. Case agents reviewed data from the court-authorized GPS device for Patterson's truck and observed that Patterson has traveled to Hutson's residence 4831 N. Oakland Avenue, Milwaukee, WI (Upper unit) on several occasions since September 6, 2013 and frequently travels to Hutson's residence in connection with trips to Patterson's storage shed and the post office or FedEx center. For example, on September 6, 2013, Patterson went to 4831 N. Oakland Avenue, Milwaukee, WI (Upper unit) twice and on September 16, 2013, Patterson went to 4831 N. Oakland Avenue, Milwaukee, WI (Upper unit) twice. Specifically on September 16, 2013 Patterson's truck pinged at the Cudahy Post office (5656 S. Packard Ave. Cudahy, WI) at 3:21 pm, **Bernardo Espinoza-Zamudio**'s residence ( 2542A N. Holton St. Milwaukee, WI) at 4:03 pm, Hutson's residence (4831 N. Oakland Ave. Whitefish Bay, WI) at 4:21 pm, the U-Haul storage unit (4390 N. Richards St. Milwaukee, WI) at 4:35 pm, and again at Hutson's residence

(4831 N. Oakland Ave. Whitefish Bay, WI) at 4:53 pm.

78.     As another example, on September 24, 2013, Patterson went to Hutson's residence 4390 N. Richards Street, Unit #E43, Milwaukee, WI, at approximately 4:57 p.m., then to the United States Post Office in Glendale, WI, and then back to 4390 N. Richards Street, Unit #E43, Milwaukee, WI.  Case agents are aware that on September 26, 2013, a  14" x 11" USPS Express Mail envelope containing an object that is approximately 2 3/4" x 5 3/4" x 6" that weighs 1 lb 6.1 ozs., was postmarked at the Kewaskum WI post office.  The parcel bears a handwritten label addressed to "Daniel Meyer, 14655 W. Park Ave, Boulder Creek, CA 95006," with a return address of "Sandra Heiniger, 133 N. Mill Street Apt C, Saukville, WI 53080." Case agents obtained a search warrant for this package, which was found to contain $1,580 hidden inside of a cigar box.  Based on their training and experience, and the investigation to date, case agents believe the currency was proceeds from Patterson or his associates' drug trafficking.  Per Patterson's phone records, Hutson has consistently been one of his top frequency contacts since August 2013 and Hutson is Patterson's 24th most frequently called number.

79.     On September 24, 2013, video surveillance of 4390 N. Richards St., Milwaukee showed that Patterson and another subject arrived in Patterson's truck and both subjects went into the storage unit.  Patterson removed an item from the storage shed and placed it in the rear cab of the truck prior to leaving the storage unit.  Thereafter, he went directly to the intersection near E. Concordia Ave. & N. Holton St., Milwaukee, which is near 2542 N. Holton St., Milwaukee.  A few hours later, at 7:24 pm, Patterson went to the FedEx Center at 5353 N. Port Washington Rd., Glendale, followed by General Mitchell International Airport, and then the FedEx World Service Center at 5375 S. 3rd St., Milwaukee.

80.     Based on their training and experience, and the investigation to date, case agents believe, based on his travel to Hutson's house at 4831 N. Oakland Ave., Whitefish Bay, followed by the storage unit, 4390 N. Richards St., Milwaukee, where he obtained a package, and then to **Bernardo Espinoza-Zamudio**'s residence at 2542 N. Holton St., Milwaukee, the airport and FedEx Centers, that Patterson shipped a package containing money for a marijuana to California and then dropped off Kevin Breitzman and possibly Bruce Hutson at the airport that evening. Case agents have issued a grand jury subpoena requesting airline records for Hutson and Breitzman, and are awaiting a response.

81.     On September 26, 2013, the location of Patterson's vehicle was monitored via GPS, which reflected that at approximately 2:27 pm he went to the U-Haul storage unit at 4390 N. Richards St., Milwaukee. He then went directly to **Bernardo Espinoza-Zamudio**'s house at 2542 N. Holton St., Milwaukee, where Patterson parked his truck in the parking stall behind 2542 N. Holton St., Milwaukee, off of the alley. Patterson exited his truck and entered 2542 N. Holton St., Milwaukee through the door located at the southeast corner of the building. At approximately 3:00 pm, Patterson exited the residence and stood by his truck, where he was observed speaking with a second unidentified subject, believed to be **Bernardo Espinoza-Zamudio**. After the meet, case agents drove to the front of 2542 N. Holton St., Milwaukee, and observed a blue Hummer H3 with Wisconsin license plate DN2568. According to DMV records, the vehicle is registered to Xochitl Morales-Zamudio, who is believed to be **Bernardo Espinoza-Zamudio's** sister. The vehicle was not present at 2542 N. Holton St., Milwaukee when Patterson initially arrived.

82.     On September 28, 2013, the location of Patterson's vehicle was monitored via GPS, which reflected that at approximately 12:24 pm Patterson went to 2542 N. Holton St.,

34

Milwaukee. Video surveillance of Patterson's residence 110 E. Belle Avenue, Whitefish Bay, WI, revealed that immediately prior to his arrival at 2542 N. Holton St., Milwaukee, Patterson placed a white garbage bag which appeared to contain an item and a white 5 gallon bucket in the rear cab of his truck. When Patterson returned home after visiting 2542 N. Holton St., Milwaukee, he removed the five (5) gallon bucket and placed it in his garage. Patterson also removed what appeared to be either a black garbage bag or backpack from his vehicle and brought it inside his residence. Based on their training and experience, and the investigation to date, case agents believe that Patterson delivered a quantity of marijuana to **Bernardo Espinoza-Zamudio** at 2542 N. Holton St., Milwaukee on this date.

83.    On October 11, 2013, the Honorable William E. Callahan, Jr., issued fifteen federal search warrants associated with these addresses, including **Bernardo Espinoza-Zamudio**'s residence at 2542 N. Holton Street, Milwaukee, WI.

84.    On October 16, 2013, case agents executed the federal search warrant at **Bernardo Espinoza-Zamudio**'s residence at 2542 N. Holton St., Milwaukee. **Bernardo Espinoza-Zamudio** was the only person present during the execution of the search warrant. Case agents recovered a Ziploc bag containing approximately 42 grams of marijuana from the living room and two jars containing a total of approximately 1179.3 grams of marijuana were recovered from the kitchen cabinet. Additionally, over one hundred rounds of ammunition were recovered from the kitchen counter.

85.    In the bedroom dresser, case agents recovered a Ziploc bag containing approximately 212.2 grams of marijuana or marijuana hash. Two handguns, a Sig Sauer P238, .380 automatic handgun bearing serial number 27A117450, with 5 rounds in one magazine, and a FNH USA Five-Seven, 5.7 28 caliber handgun bearing serial number 386246137, were recovered

from the top shelf of the bedroom closet. Additionally, more than $1,000 in U.S. currency was recovered from a large bedroom dresser.

86. After being advised of his rights, **Bernardo Espinoza-Zamudio** told case agents that he only had the "guns, money, and drugs" during the execution of the search warrant. He also admitted to smoking marijuana earlier that morning. Based on their training and experience, and the investigation to date, case agents believe that **Bernardo Espinoza-Zamudio** possessed the firearms to protect his marijuana and marijuana proceeds.

## IV.    CONCLUSION

87. Based on the foregoing, there is probable cause to believe that on or about October 16, 2013, in the State and Eastern District of Wisconsin, **Bernardo Espinoza-Zamudio** knowingly possessed a firearm in furtherance of a drug trafficking crime, namely possession with intent to distribute marijuana, a Schedule I controlled substance, in violation of Title 18, United States Code, Section 924(c)(1)(A)(i).